UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

TIFFANY CASILLAS THOMPSON                                              PLAINTIFF

v.                          CASE NO. 3:07-CV-00010 GTE

DR. RANDALL GUNTHARP                                                   DEFENDANT

## ORDER

Presently before the Court are Defendant's Motion to Dismiss and Plaintiff's Motion for Partial Summary Judgment.

## I. FACTUAL ALLEGATIONS

Plaintiff's Complaint alleges the following: Defendant Dr. Randall Guntharp was an adjunct professor teaching anatomy and physiology at Black River Technical College ("BRTC"), a state institution of higher learning in Pocahontas, Arkansas. Plaintiff Tiffany Casillas Thompson was a student enrolled in Dr. Guntharp's anatomy lab. On March 10, 2005, Plaintiff was attending an anatomy lab at 7:00 p.m. A video over colorectal cancer was shown to the 12 to 13 students in the class. During class, Plaintiff asked Dr. Guntharp if breast cancer was hereditary because of information in the video. As the other students were leaving the class, Dr. Guntharp asked the Plaintiff if anyone in her family had had breast cancer, to which Plaintiff responded that her great grandmother had had it.

Plaintiff then asked Dr. Guntharp when one should be checked for breast cancer. Dr. Guntharp stated that the Plaintiff should be checked now, and asked her if she had been shown

how to do a manual breast exam, to which she responded, "No." Dr. Guntharp told the Plaintiff to raise her arm, which she did. While Plaintiff's arm was up, without Plaintiff's permission, Dr. Guntharp put his hand under Plaintiff's shirt and lifted up her brassiere. The Plaintiff states that she was stunned, shocked, and scared. Dr. Guntharp exposed Plaintiff's breast and allegedly fondled it. Dr. Guntharp told the Plaintiff that she needed to check her nipple for secretions while looking at her. At this point, the classroom was empty and the door was shut. Plaintiff told Dr. Guntharp that she would ask her doctor how to do it. After regaining her composure, Plaintiff left the classroom.

On Monday, March 14, 2005, Plaintiff complained about the incident to Jack McCord, the Chief Academic Officer at BRTC. Plaintiff was embarrassed and told her parents after speaking to Mr. McCord. Dr. Guntharp admitted Plaintiff's allegations to Mr. McCord. Mr. McCord had Plaintiff describe the situation again a second time in front of a person identified as Dr. Johnson, and Mr. McCord stated that Dr. Guntharp's version of what happened was close enough to the way Plaintiff had described it, and that, in his opinion, it presented a problem. Dr. Guntharp's explanation was that he had allowed his medical practice to carry over into the classroom, and he admitted that he pulled up Plaintiff's sweater and bra. Mr. McCord indicated to Dr. Guntharp that Dr. Guntharp's conduct was inappropriate and that Dr. Guntharp would not be allowed to continue teaching at BRTC. Dr. Guntharp turned in his resignation that same day.

Also on March 14, 2005, Plaintiff met with Mr. McCord for a second time. Plaintiff's parents were to attend this meeting. Before her parents arrived, Mr. McCord stated to her that he had known Dr. Guntharp for twenty years and Dr. Guntharp had had problems like this in the past, that Dr. Guntharp was sick, that this was a second chance for him, and that Dr. Guntharp

"blew it." Plaintiff states that Dr. Guntharp was convicted in the Randolph County District Court for disorderly conduct and was the defendant in the matter of *Cathy McQuay White, Sue Beebe, Sharion Cantrell Hopper and Brandy Thatch Brooks v. Randall Guntharp, M.D., and Arkansas Internal Medicine Clinic, d/b/a Pocahontas Family Clinic*, Circuit Court of Randolph County, No. CIV 96-20, concerning similar allegations of misconduct.

Plaintiff's Complaint alleges that Defendant's conduct constitutes a violation of 42 U.S.C. § 1983, specifically of violation of her substantive due process rights under the Fourteenth Amendment of the Constitution of the United States, and also the state tort of outrage. However, Plaintiff's Complaint also states that Dr. Guntharp violated "the natural and fundamental right to follow the law without being punished for such lawful behavior, First Amendment rights of freedom of speech and freedom to petition for redress of grievances, rights of privacy specifically encompassing rights in private mail, and have deprived her of property rights and a liberty interest in her reputation by not according her procedural due process of law." It does not appear that Plaintiff pursues any of the latter claims, as she does not discuss them in her response to the Motion to Dismiss or in her Motion for Summary Judgment. Regardless, the Court finds no factual allegations in the Complaint which would support those claims. Therefore, the Court need only consider the motion as to Plaintiff's substantive due process and outrage claims.

## II. APPLICABLE STANDARDS

### A.. Motion to Dismiss

Defendant moves for dismissal of Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) on the grounds that this Court lacks subject matter jurisdiction

and/or that Plaintiff has failed to state a claim upon which relief can be granted.  When ruling on a motion to dismiss, the Court must accept the allegations contained in the Complaint as true and draw all reasonable inferences in favor of the nonmoving party.  *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005).[1]

### B. Motion for Partial Summary Judgment

Plaintiff asserts that she is entitled to summary judgment[2] on each of her claims, with the exception of the value of her damages.  As discussed above, the Court will consider Plaintiff's motion as seeking summary judgment on her 42 U.S.C. § 1983 federal substantive due process claim and her state outrage claims.  Summary judgment is appropriate only when, in reviewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, so that the dispute may be decided solely on legal grounds.  Fed. R. Civ. P. 56.  The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial-- whether, in other words, there are genuine factual issues that

---

[1] The Court notes that the United States Supreme Court recently clarified the standard to be applied when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Bell Atlantic Corp. v. Twombly*, - - U.S. - -, 127 S.Ct. 1955 (2007).  There, the Court rejected the "no set of facts" language contained within the statement, "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief." *Id.* at 1968.  The Court stated, "The phrase is best forgotten as an incomplete negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.*

[2] It appears that Plaintiff first proposes that the Court treat Defendant's Motion to Dismiss as a motion for summary judgment, as she asserts that the Court may treat a motion under Rule 12(b)(6) as a motion for summary judgment.  However, it is obvious that Plaintiff is actually seeking summary judgment in her favor.

> properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id*.

Once the moving party demonstrates that the record does not disclose a genuine dispute on a material fact, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The plain language of Rule 56(c) mandates the entry of summary judgment against a non-moving party which, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322.

### III.  APPLICABLE LAW

#### A.  Section 1983 Substantive Due Process Claim

A § 1983 plaintiff must prove the "(1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." *Hart v. City of Little Rock*, 432 F.3d 801, 804-05 (8th Cir. 2005) (citing *Kuha v. City of Minnetonka,* 365 F.3d 590, 606 (8th Cir.2003) (quoting *Shrum v. Kluck,* 249 F.3d

773, 777 (8th Cir.2001))). "[T]he Fourteenth Amendment to the Constitution protects substantive aspects of an individual's liberty from impermissible government restrictions." *Hawkins v. Holloway*, 316 F.3d 777, 780 (8th Cir. 2003) (citing *Harrah Indep. Sch. Dist. v. Martin*, 440 U.S. 194, 197, 99 S.Ct. 1062, 59 L.Ed.2d 248 (1979)). "Substantive due process offers only limited protections and only guards against the exercise of arbitrary and oppressive government power." *Id*. (citing *Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)).

> "[T]he constitutional concept of conscience shocking duplicates no traditional category of common-law fault, but rather points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability," *Lewis,* 523 U.S. at 848, 118 S.Ct. 1708, and "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process," *Id.* at 849, 118 S.Ct. 1708. Instead, "[a]ctionable substantive due process claims involve a level of ... abuse of power so brutal and offensive that [they do] not comport with traditional ideas of fair play and decency." *Avalos,* 382 F.3d at 800 (quoting *S.S.,* 225 F.3d at 964) (internal quotations omitted); *see also Moran v. Clarke,* 296 F.3d 638, 647 (8th Cir.2002) (Substantive due process violations involve conduct "so severe ... so disproportionate to the need presented, and ... so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience.") (quoting *In re Scott County Master Docket,* 672 F.Supp. 1152, 1166 (D.Minn.1987)). "Proof of intent to harm is usually required, but in some cases, proof of deliberate indifference, an intermediate level of culpability, will satisfy this substantive due process threshold." *Terrell v. Larson,* 396 F.3d 975, 978 (8th Cir.2005) (citing *Lewis,* 523 U.S. at 848-49, 118 S.Ct. 1708) (holding the deliberate indifference standard is applied when actual deliberation is practical)).

*Hart v. City of Little Rock*, 432 F.3d 801, 806 (8th Cir. 2005).

"In the context of allegations that a state official has abused his executive power, the test we employ to ascertain a valid substantive due process violation is 'whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Hawkins*, 316 F.3d at 780 (citing *County of Sacramento v. Lewis*,

523 U.S. 833, 848 n.8, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)). "[W]hether assaultive conduct 'shocks the conscience' to a degree sufficient to be cognizable as a constitutional claim depends upon both the nature of the injury or intrusion and the degree to which the intrusion is 'unjustifiable by any government interest.'" *Busch v. City of Anthon, Iowa*, 173 F. Supp.2d 876, 889 (N.D. Iowa 2001). "The Supreme Court has been reluctant to expand the protections afforded by substantive due process 'because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended,' and it has only done so with the 'exercise [of] the utmost care.'" *Hawkins*, 316 F.3d at 780-81 (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)).

"The guarantee of due process draws a line between the power of the government, on the one hand, and the security of the individual, on the other." *Id*. at 781 (citing *Burton v. Livingston*, 791 F.2d 97, 99-100 (8th Cir.1986)). "This line is not a fixed one like a property boundary." *Id*. "Its location must be surveyed anew by the court in each case through an examination of the benchmarks disclosed by the circumstances surrounding the case." *Id*.

"A sexual assault can be a constitutional violation under section 1983." *Haberthur v. City of Raymore*, 119 F.3d 720, 723 (8th Cir. 1997) (citing *Harris v. City of Pagedale,* 821 F.2d 499, 508 (8th Cir. 1987) (city liable under section 1983 when police officer sexually fondled and raped a woman)). "This type of constitutional injury has been described as a violation of the substantive due process right to bodily integrity or privacy, and the courts of appeal have

recognized that the right may be violated by sexual fondling and touching or other egregious sexual contact." *Id.*[3]

In *Hawkins*, the Eighth Circuit noted that the Supreme Court had not yet had the opportunity to address whether a sexual assault committed by a state actor may give rise to an actionable substantive due process violation under § 1983, but reviewed the cases in which it had considered the issue, stating:

> In *Haberthur*, we reversed the district court's dismissal of a plaintiff's substantive due process claim arising out of a police officer's sexually-assaultive conduct. We recognized that an actionable claim under § 1983 for a substantive due process violation may accrue where a public official engages in "sexual fondling and touching or other egregious sexual contact" under color of state law and concluded the plaintiff alleged facts demonstrating such conduct. *Haberthur*, 119 F.3d at 723. In particular, the plaintiff alleged that the police officer showed up at her workplace, placed his hands under her shirt and fondled her breast, and caressed her body while making sexually suggestive comments to her. *Id*. at 724. We characterized the alleged conduct as "intrusive, demeaning, and violative of [the plaintiff's] personal integrity," and recognized that the officer had threatened adverse police action in making his unwanted advances. *Id*. A little over a year later, in *Rogers*, we upheld a district court's finding following a bench trial that a police officer had sexually assaulted a woman in violation of her substantive due process rights. 152 F.3d at 797. The facts established that the officer pulled the woman over for a traffic violation and later followed her home under the guise of obtaining her missing proof of automobile insurance. At her home, the officer ordered her to disrobe, pushed her onto her bed, and had sexual intercourse with her. We concluded that the facts supported a finding that the intercourse was

---

[3]Citing *Lillard v. Shelby County Bd. of Educ.,* 76 F.3d 716, 727 (6th Cir. 1996) (teacher's fondling a student's breast may violate the substantive due process right to bodily integrity); *McWilliams v. Fairfax County Bd. of Supervisors,* 72 F.3d 1191, 1197 (4th Cir.), *cert. denied,* 519 U.S. 819, 117 S.Ct. 72, 136 L.Ed.2d 32 (1996) (substantive due process right against unreasonable bodily intrusions violated when employee was forced to his knees, a finger was inserted in his mouth and a broomstick placed next to his clothed buttocks, and he was sexually fondled); *Sepulveda v. Ramirez,* 967 F.2d 1413, 1415-16 (9th Cir.1992) (parole officer not entitled to qualified immunity for depriving woman of clearly established due process right to bodily privacy by entering a bathroom stall and watching her urinate).

> nonconsensual and that the officer accomplished the rape through the exercise of coercive power that he possessed as a law enforcement officer. 152 F.3d at 796-97. Recognizing that the officer's conduct was undertaken with no legitimate governmental objective, we held that a police officer's commission of a rape fell at the extreme end of the " 'arbitrary exercise of the powers of government' " that substantive due process protections were intended to guard against. *Id.* at 797 (quoting *Lewis*, 523 U.S. at 845, 118 S.Ct. 1708).

316 F.3d at 784.

In *Hawkins*, the Eighth Circuit held that while some of the allegations of "sexual assault" were distinguishable from those in *Rogers* and *Haberthur* , the allegations by a female officer that the sheriff repeatedly and intentionally touched her breasts constituted a violation of her bodily integrity sufficient to support a substantive due process claim. *Id.* at 784-85. More specifically, she alleged that from October 1996 until November 1999, "the sheriff inappropriately touched her and made vulgar comments to her during her employment," and the sheriff once came up from behind her and placed his hands around her and grabbed her breasts." *Id.* at 785. Additionally, "[o]n several occasions, the sheriff stood next to her and pulled her close to him [,] [and] [o]ften times when the sheriff did so, he laid his hand on [the female officer's] breast." *Id.* "The sheriff often picked up [her] beverage, placed it near his crotch, and asked [her] if she wanted him to fill it up." *Id.* "[She] was also present when the sheriff pulled his weapon on others, and she feared for her safety during the incidents." *Id. But see id.* ("Not every inappropriate or unwanted touching by a public official, even if accompanied by vulgar comments of a sexual nature, can amount to the 'brutal and inhumane abuse of official power'

necessary to demonstrate a violation of an individual's bodily integrity sufficient to support a constitutional violation.").[4]

**B. Outrage Claim**

"To establish a claim for the tort of outrage, a plaintiff must demonstrate the following elements: (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was 'extreme and outrageous,' was 'beyond all possible bounds of decency,' and was 'utterly intolerable in a civilized community;' (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it." *Marlar v. Daniel*, 368 Ark. 505, - - S.W.3d - - (2007) (citing *Crawford v. Jones*, 365 Ark. 585, - - S.W.3d - - (2006)). "The type of conduct that meets the standard for outrage must be determined on a case-by-case basis." *Id*. (citing *Crockett v. Essex*, 341 Ark. 558, 19 S.W.3d 585 (2000). "Our court gives a narrow view to the tort of outrage and

---

[4]Citing *Berryhill v. Schriro*, 137 F.3d 1073, 1076 (8th Cir. 1998) (concluding that brief touches to a person's buttocks do not support a finding of a sexual assault amounting to cruel and unusual punishment); *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996) (holding that a teacher's act of rubbing a student's stomach while he made suggestive remarks to her did not violate the student's right to bodily integrity and stating that it is inconceivable that a "single slap" could shock the conscience); *Reeve v. Oliver*, 41 F.3d 381, 382-83 (8th Cir. 1994) (refusing to find a substantive due process violation when a state actor touched and rubbed a woman's back while staring at her chest); *Petrone v. Cleveland State Univ.*, 993 F. Supp. 1119, 1126 (N.D. Ohio 1998) (holding that allegations of a supervisor's sexual advances, including one where the supervisor slid his hand along a woman's leg toward her pelvic area, did not state a substantive due process claim); *Jones v. Clinton*, 974 F. Supp. 712, 725 (E.D. Ark. 1997) (finding no substantive due process violation where the governor allegedly sought sex from an employee, exposed himself, and asserted that he possessed ongoing authority over the female state employee).

requires clear-cut proof to establish the elements in outrage cases." *Id.* "Merely describing the conduct as outrageous does not make it so." *Id.*

The Arkansas Supreme Court "has recognized that in some cases the existence of a special relationship between the parties can justify a finding of outrage where "the gist of the claim arose out of the violation of that relationship . . . ." *Allen v. Allison*, 356 Ark. 403, 417, 155 S.W.3d 682, 692 (2004) (quoting *McQuay v. Guntharp,* 331 Ark. 466, 474, 963 S.W.2d 583 (1998)).  In *McQuay*, a lawsuit brought against the Defendant in this case, female patients alleged that Dr. Guntharp improperly touched, examined, and fondled their breasts during physical examinations, and that as a result of the trauma, they suffered and continue to suffer from extreme mental anguish.  331 Ark. at 475, 963 S.W.2d at 587.  The Arkansas Supreme Court held that the trial court erred in dismissing the plaintiffs' outrage claims for failure to state a claim, emphasizing the relationship in the case.  *Id*.  The Court stated:

> The nature of the physician-patient relationship and the nature of the allegations presented by [the plaintiffs] create the appropriateness of a suit for tort of outrage. A patient entrusts his or her body and sense of dignity to a physician. The patient subjects himself or herself to a loss of this dignity and a loss of privacy by even divulging his or her personal thoughts as to what ails him or her. Looking to the facts alleged in the complaint, it is apparent that these patients were most vulnerable by presenting their bodies to a physician whom they trusted to exercise professionalism in his treatment, only to be taken advantage of by a doctor seeking his own personal gratification.

*Id*.

### IV.  MOTION TO DISMISS

Defendant moves for dismissal of Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) on the grounds that this Court lacks subject matter jurisdiction

and/or that Plaintiff has failed to state a claim upon which relief can be granted.  Defendant asserts that because Plaintiff fails to state a claim under 42 U.S.C. § 1983, this Court lacks jurisdiction over this matter.  Defendant also asserts that Plaintiff's allegations fail to state a claim for the tort of outrage under Arkansas law.

Accepting the allegations contained in the Complaint as true and drawing all reasonable inferences in favor of the Plaintiff, as the Court must in deciding a motion to dismiss, the Court finds that Defendant's motion should be denied.  As to Plaintiff's substantive due process claim, the allegations in Plaintiff's Complaint are similar to those in *Hawkins*.  The Court notes the teacher/student relationship in this case.  Additionally, Plaintiff's allegations are similar to those in *McQuay* with regard to her outrage claim.  Therefore, the Court finds that the allegations in Plaintiff's Complaint are sufficient to state a substantive due process claim under 42 U.S.C. § 1983 and an outrage claim.  Therefore, this Court has jurisdiction over this matter.

## V.  MOTION FOR SUMMARY JUDGMENT

As stated above, Plaintiff asserts that she is entitled to summary judgment on each of her claims, with the exception of the value of her damages.  In considering Plaintiff's Motion for Partial Summary Judgment, the Court must consider the evidence in the light most favorable to Dr. Guntharp.  In opposition to Plaintiff's motion, Defendant submits an affidavit asserting that Plaintiff raised her arms voluntarily and gave no verbal or nonverbal indication that she did not want him to show her how to perform a self-examination for breast cancer at any time before, during, or after the examination.  He further asserts that he explained how to perform the examination and demonstrated the procedure in accordance with appropriate medical standards

and in accordance with his medical training and experience.  Defendant states that he "did not fondle Plaintiff's breast(s)," and "[a]t no time did I seek or experience any sexual gratification with regard to the demonstration in question."  He further states that at no time did he "intend to injure, embarrass, harass, threaten, or cause emotional distress to Plaintiff," and did not "know or have reason to know that emotional distress was a likely result of his conduct."  Finally, he states that the prior civil cases filed against him were dismissed by the Circuit Court of Randolph County and the Arkansas Medicaid Board found no improper conduct on his part.

While the Court finds that Plaintiff's allegations survive Defendant's Motion to Dismiss, Plaintiff is not entitled to summary judgment.  As to both claims, Dr. Guntharp has adequately disputed that the requisite intent has been sufficiently established for summary judgment purposes.[5]  Furthermore, the determination of this issue is largely a matter of credibility, which is properly for the jury.  The Court finds that there is a genuine issue of material fact as to Defendant's intent, and therefore, summary judgment is not appropriate.  Plaintiff's motion is denied.

Accordingly,

IT IS HEREBY ORDERED THAT Defendant's Motion to Dismiss (Docket No. 3) be, and it is hereby, DENIED.

---

[5]Dr. Guntharp also asserts that he needs more time for discovery to determine whether Plaintiff's ability to pursue her academic studies, social relationships, or employment performance have been affected by the alleged emotional distress, in order to refute the severity of the alleged emotional distress.

IT IS FURTHER ORDERED THAT Plaintiff's Motion for Summary Judgment (Docket No. 9) be, and it is hereby, DENIED.

IT IS SO ORDERED this 24th day of September, 2007.

/s/Garnett Thomas Eisele_____
UNITED STATES DISTRICT JUDGE